PARTIDO POPULAR DEMOCRÁTICO y OTROS, demandantes y apelantes, *v.* SERGIO PEÑA CLOS y OTROS, demandados y apelados.

*Número:* AP-95-10          *Resuelto:* 28 de mayo de 1996

---

*Pedro E. Ortiz Álvarez,* abogado de los peticionarios.

— O —

Voto disidente del Juez Asociado Señor Negrón García.

El pasado 17 de mayo de 1996 disentimos de la sentencia del Tribunal "que permitió" al Lcdo. Sergio Peña Clos permanecer en el Senado y ordenó a la Comisión Estatal de Elecciones *"que, a tenor con el Art. 6.012 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3272 ... certifi[cara] el candidato correspondiente para completar la representación de la minoría [del Partido Popular Democrático] en dicho*

*cuerpo legislativo"*. (Énfasis en el original.) *P.P.D. v. Peña Clos I*, 140 D.P.R. 779, 782 (1996).

Tomamos conocimiento judicial de que bajo la sentencia y el orden de los votos obtenidos por candidatos adicionales del Partido Popular Democrático (en adelante P.P.D.), según el escrutinio oficial de las elecciones generales de 1992, sería acreedor al nuevo escaño el Sr. Juan Rivera Ortiz y, en su defecto, la Srta. Ana Nisi Goyco.

Al disentir, dijimos:

Al aspirar a su nominación para el Senado, el Lcdo. Sergio Peña Clos *no lo hizo como candidato independiente*; menos como candidato del *Partido Nuevo Progresista (en adelante P.N.P.)*. Actuó como "elector *afiliado" del Partido Popular Democrático (en adelante P.P.D.)*, prestó *juramento* de que así aceptaba ser postulado *como candidato*, que *acataría* su Reglamento Oficial y *cumpliría* con los demás requisitos constitucionales y legales aplicables.

Desde su *génesis*, su candidatura estuvo *condicionada, cualificada* y *atada* al *requisito* de ser miembro *bona fide, afiliado al P.P.D.* De hecho, el Art. 4.014 de la Ley Electoral de Puerto Rico requiere que el aspirante "figur[e] en el registro de electores afiliados del Partido", bajo cuya insignia se presenta al pueblo. 16 L.P.R.A. sec. 3164.

En nuestro diseño constitucional-electoral hay una correlación recíproca que en virtud de esos requisitos legales y del juramento se convierte en un *pacto de dimensión tripartita*. Éste se proyecta entre el *candidato, los electores* que suscriben inicialmente su petición de primarias y luego votan por él y por el *partido político* al cual el candidato y los electores pertenecen. *Ese pacto se renueva y ratifica el día de los comicios generales* y, con la elección del candidato a la Legislatura, *se extiende durante todo el cuatrienio*. El elemento jurídico y moral *constante en esa relación es la confianza de los electores y el compromiso del candidato de que su afiliación, aspiración y elección es legítima, personal e intransferible*. En consecuencia, la expectativa y confianza de los electores y el partido concernido de conservar todos sus escaños durante el cuatrienio es una premisa constitucional cognocible.

La naturaleza especial y el interés público del que está revestido en todas sus etapas la elección de un legislador, reclama su más estricta aplicación y observancia como único mecanismo para no subvertir *la razón lícita y seriedad* en que se funda *una candidatura bajo un partido político*. Cuando en el ejercicio de

su respetable derecho a la libre expresión y asociación, *por decisión propia*, un legislador se desafilia del partido político por el cual figuró en la papeleta y fue electo, realmente da la espalda y anula el derecho de expresión y asociación, *también respetables*, de los miles de electores que depositaron sus votos y confianza en él como candidato *de determinado partido*.

El Poder Judicial no puede convalidar y dar por bueno semejante vicio de índole legal y moral contrario a la Constitución y a la Ley Electoral de Puerto Rico. El licenciado Peña Clos no representa ya el compromiso en que sus electores fundamentaron su consentimiento. *Su permanencia en un escaño, como Senador del P.N.P., ofende entonces la letra y el espíritu de la Constitución y de la Ley Electoral de Puerto Rico.* Más que nada, subvierte el proceso de candidaturas, el pacto tridimensional expuesto y, sobre todo, convierte la Constitución en una farsa que mina la confianza pública y niega al proceso electoral su verdadera esencia como instrumento útil de estabilidad social-ciudadana.

*La solución del Tribunal es ilógica, trágica y contraria a un sistema de gobierno democrático.* El menoscabo del mandato expresado en las últimas elecciones generales es *directo y sustancial.* En síntesis, por fíat judicial, *primero, altera* la composición numérica e ideológica del Senado que han sido instituidas por la voluntad soberana del pueblo. *Segundo, otorga* al P.N.P. un escaño senatorial que pertenece al P.P.D. *Tercero*, añade un senador *más* sin que exista vacante alguna entre los escaños de la mayoría del P.N.P., o sea, permite que el Senador Peña Clos —ahora miembro de la mayoría del P.N.P— *sin tener derecho*, retenga un escaño que *por su origen y naturaleza* correspondió a la minoría representada por el P.P.D. *Cuarto*, consagra una norma muy peligrosa que atenta contra la estabilidad y el balance legislativo que debe existir hasta las próximas elecciones generales. *Quinto, ha sacrificado principios elementales*, y en aras de lograr un resultado que, *visto superficialmente no revela partes perdidosas, ha consagrado la regla de que el cambio de lealtades partidistas por la decisión unilateral de un legislador puede violentar la voluntad electoral y trastocar los derechos —aquí de las minorías— sin sujeción alguna a la Constitución y a la Ley Electoral de Puerto Rico.*

El *único ganador neto aparente es el partido político de mayoría actual, el P.N.P.; el perdedor, más que la minoría del P.P.D., la democracia puertorriqueña, el sistema de gobierno que juramos defender.* (Énfasis suplido y en el original.) *P.P.D. v. Peña Clos I*, supra, págs. 840–842, opinión disidente.

Más adelante, expresamos:

La sentencia mayoritaria, como por arte de magia, modifica la composición ideológica y la voluntad electoral expresada por el pueblo en los comicios pasados. Al resolver que procede la certificación de la elección de un senador adicional, afiliado al P.P.D., intenta mantener el mandato electoral de dos (2) senadores del P.P.D. según la Sec. 7 del Art. III, *supra*. Sin embargo, al reconocer que el licenciado Peña Clos tiene derecho a *continuar, inexorablemente, altera dicho mandato, pues aumenta en uno (1) los miembros de senadores afiliados al caucus del P.N.P.*

La tabla siguiente ilustra *de forma dramática* esta alteración:

| Situación | Senadores Electos | | | Senadores por adición | | Total de Senadores | Representación Porcentual de la Mayoría |
|---|---|---|---|---|---|---|---|
| | Mayoría | Minoría | | | | | |
| Al momento de constituirse el Senado | 20 (PNP) | 7 | 6(PPD) | 2 (PPD) | | 29 | 68.96 |
| | | | 1(PIP) | | | | |
| Al momento de desafiliarse el Sen. Peña Clós del PPD y quedarse independiente | 20 (PNP) | 7 | 6(PPD) | 2 | 1(PPD) | 29 | 68.96 |
| | | | 1(PIP) | | 1(Indep) | | |
| Al momento de afiliarse el Sen. Peña Clós al PNP | 21 (PNP) | 7 | 6(PPD) | 1 (PPD) | | 29 | 72.41 |
| | | | 1(PIP) | | | | |
| Al momento de la Sentencia de este Tribunal | 21 (PNP) | 7 | 6(PPD) | 2 (PPD) | | 30 | 70.00 |
| | | | 1(PIP) | | | | |

Con *absoluta objetividad,* la tabla pone de manifiesto cómo la nueva composición ideológica acentuó la mayoría absoluta de dos terceras partes (2/3) que tenía el P.N.P. y el extraordinario poder para, sin necesidad de contar con el voto de las minorías, sancionar o expulsar a uno de sus miembros al amparo de la Sec. 9, Art. III de nuestra Constitución, *supra*. Esta ventaja subsiste, no obstante la vacante creada con la expulsión del Lcdo. Nicolás Nogueras decretada el abril 25 pasado.

De igual modo aumenta el presupuesto del Senado y, como corolario, automáticamente también el asignado al P.N.P., con las consabidas oportunidades y ventajas sobre el área de recursos humanos y al cubrir las comisiones senatoriales. En contraste con ello, la representación de la minoría P.P.D. y su presupuesto se mantienen *igual. ¿Es esto un balance constitucional? ¿Es justo?* Más aún, en comparación con el *nuevo total de senadores,* incrementa la representación porcentual de la

mayoría del P.N.P. y disminuye la de la minoría del P.P.D., ello en claro menosprecio del deseo electoral y el espíritu de la Constitución. (Escolios omitidos, énfasis en el original suprimido y énfasis suplido.) *P.P.D. v. Peña Clos I*, supra, págs. 853–854, opinión disidente.

Finalmente, concluimos que la *desafiliación e ingreso al Partido Nuevo Progresista del licenciado Peña Clos era una anomalía que no podía elevarse a categoría de virtud*. "Por imperativo constitucional *constituyó una renuncia* que creó una *vacante* perteneciente al P.P.D. No hay razón alguna jurídica ni moral para *judicialmente* crear inconstitucionalmente *otro escaño más* y permitirle continuar como Senador del P.N.P. *Nadie, ni un solo elector, lo eligió para ocupar un escaño de ese partido*." (Énfasis en el original.) *P.P.D. v. Peña Clos I*, supra, pág. 859.

Una vez los legisladores son jurados, la Constitución sólo visualiza y provee mecanismos para llenar vacantes, no crear escaños.

Según la tesis mayoritaria —que inconstitucionalmente creó un *nuevo escaño*— no procedería reconsiderar el mandato de la sentencia que conlleva que la Comisión Estatal de Elecciones certifique hoy al Señor Rivera Ortiz. Sin embargo, esa ruta decisoria no hay que seguirla indefectiblemente, bajo nuestra interpretación constitucional de que la desafiliación del licenciado Peña Clos creó una *vacante ipso jure* (no un nuevo escaño) que debe ser llenado según el mandato de la Sec. 8 del Art. III de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1. En lo pertinente, dispone:(¹)

Cuando la vacante ocurra en el cargo de un Senador o un Representante por Acumulación, se cubrirá por el Presidente de la Cámara correspondiente, a propuesta del partido político a que

---

(¹) En su Moción de Reconsideración, el Partido Popular Democrático transcribe el texto correspondiente original de esta Sec. 8 del Art. III de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, enmendado mediante referéndum aprobado en 1964.

pertenecía el Senador o Representante cuyo cargo estuviese vacante, *con un candidato seleccionado en la misma forma en que lo fue su antecesor.* (Énfasis suplido.) Art. III, Sec. 8, Const. E.L.A., *supra*, ed. 1982, pág. 339.

Insistimos, a partir de 12 de octubre de 1993 —fecha en que *voluntariamente* el licenciado Peña Clos se desafilió del *caucus* del P.P.D.—[2] surgió *ipso jure* una *vacante que debió ser llenada de inmediato. Desde entonces existen miles de electores (que votaron por el licenciado Peña Clos bajo la insignia del P.P.D.) huérfanos de representación.*

Es *errónea*, pues, la sentencia mayoritaria que aplicó el Art. 6.012 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3272. Según indicamos, existe una *vacante* en un escaño por acumulación que debió llenar el P.P.D. hace tiempo, conforme la Sec. 8 del Art. III de la Constitución del Estado Libre Asociado, *supra*.

Estamos ante un *mandato constitucional* que no es susceptible de ser malinterpretado por razones de conveniencias político-partidistas o de cualquier otra índole.

Mientras tanto, subsiste la desigualdad ideológica y numérica en el Senado; peor aún, un vacío en la representación de miles de electores. Sin demoras, procede reconsiderar.

---

[2] Luego de fungir como Senador independiente, ingresó oficialmente al *caucus* del Partido Nuevo Progresista el 3 de abril de 1995.